## Bone v. Duryea.

(Decided June 20, 1924.)

### Appeal from Pike Circuit Court.

Vendor and Purchaser—Contract as to Purchase of Lands in Litigation Held of no Effect in View of Result of Action.—Contract between litigants for land whereby one of three agreed to purchase land involved at a certain price to be divided between other two held of no effect where one of two recovered only a one-fourth interest in price for which land was sold by her grantee and title of other was held invalid.

HAGER & STEWART and AUXIER, HARMAN, FRANCIS & HOBSON for apppellant.

J. R. JOHNSON, JR. and S. S. WILLIS for appellee.

Opinion of the Court by Turner, Commissioner—
Affirming.

W. F. Weld, prior to 1896, was the owner of certain mineral rights in 32 tracts of land in Pike county aggregating about 6,000 acres. He died and left a will wherein he devised same to his wife.

The taxes of 1896 on this property were unpaid, and the sheriff advertised and sold the same for such taxes, and at the tax sale M. W. Hellier (now appellant Mrs. Bone) became the purchaser, and the sheriff thereafter conveyed the same to her, and she in turn conveyed same to the Big Sandy Company.

Mrs. Weld thereafter married H. B. Duryea, and in February, 1906, they conveyed all of such mineral rights to E. Rollins Morse under a trust agreement, whereby Morse was to take possession of, pay the taxes on and sell such mineral rights, and upon the sale of same Mrs. Duryea was to receive 25 per cent. of the gross proceeds of such sale.

Later Morse sold and conveyed the same to Lon Rogers and Fon Rogers at the price of $15.00 per acre, and it was a part of the contract of sale that Rogers should take steps to cancel the tax deed to the property made by the sheriff to M. W. Hellier, and thereafter conveyed by her to the Big Sandy Company.

Some five years after the conveyance by Morse to the Rogers brothers, Mrs. Duryea instituted her equitable action against Morse and the Rogers brothers to set aside and cancel the conveyance by her to Morse, and the conveyance by Morse to the Rogers brothers, on the ground that the first named was obtained by fraud, and upon the allegation that Rogers brothers were not purchasers for value without notice. In the action she also made the Big Sandy Company a defendant and prayed that the tax title held by it under conveyance from Mrs. Hellier be also canceled.

In this action to set aside these several conveyances Mrs. Bone was not made a party, although her vendee, the Big Sandy Company, was, and it was directly sought to set aside the tax title under which it then held.

The Duryea action was filed in 1911, and was vigorously defended not only by Morse, the original vendee of Mrs. Duryea, but by his vendees the Rogers brothers;

likewise the Big Sandy Company undertook in that action to uphold and have declared valid the tax title which it held under its conveyance from Mrs. Hellier and her tax deed from the sheriff.

In 1915 a judgment was entered in the circuit court wherein it was adjudged the deed from Mrs. Duryea to Morse was invalid, that the deeds by Morse to the Rogers brothers were invalid, and that the tax deed made to Mrs. Hellier (now Bone) by the sheriff, and then held by the Big Sandy Company, was also invalid. That judgment reinvested the full title in Mrs. Duryea to the mineral rights in question by the payment of certain liens, incumbrances and expenses not here involved.

From that judgment Morse appealed, the Rogers brothers appealed, and the Big Sandy Company appealed, and this court having heard the three appeals together in 1917 reversed the judgment in so far as it cancelled the deeds from Mrs. Duryea to Morse, and from Morse to the Rogers brothers, but affirmed the same in so far as it adjudged invalid and cancelled the tax deed under which the Big Sandy Company claimed (Morse v. Duryea, 174 Ky. 234), the effect of which was to adjudge that Mrs. Duryea under her agreement with Morse was entitled to only one-fourth of the purchase price of $15.00 per acre which the Rogers brothers had agreed to pay to Morse, and to adjudge that the Big Sandy Company had no title whatsoever under the tax deed of the sheriff to Mrs. Hellier (now Bone).

After the filing of the mandate of this court, but before judgment had been entered in accordance therewith, Mrs. Bone and her husband intervened in the action, setting up a written contract entered into in June, 1912, during the pendency of the Duryea action in the circuit court, between Mrs. Duryea and her husband, Mrs. Bone and her husband, and the Big Sandy Company, under and by which, as alleged, she (Mrs. Bone) was entitled to one-half of the 25 per cent. of the sale price of the property by Morse to Rogers brothers which it was in the action conceded by Morse and Rogers brothers was coming to Mrs. Duryea.

Up to the time that contract was entered into neither Mrs. Duryea nor Mrs. Bone had received from their respective vendees any consideration whatever for their conveyances.

The contract relied upon, and the interpretation of which is the only question involved on this appeal, is as follows:

"Agreement made and entered into this 29th day of June, 1912, by and between Big Sandy Company, a corporation, of the first part, and M. W. Bone and her husband, Stanley Bone, of the second part, and Ellen W. Duryea and H. B. Duryea, her husband, of the third part,

"WITNESSETH:

"That WHEREAS, the second parties conveyed to the first party by deed bearing date................day of 19....., certain coal lands in Pike county, Kentucky, calling for................ acres, and the first party is in possession of said lands by its agents, employees and lessees; and,

"WHEREAS, said lands formerly belonged to Ellen W. Duryea, one of the third parties, and she has never received any pay or consideration therefor, and has now pending in the circuit court of Pike county, Kentucky, a suit to enforce her rights and claims to said property in the case of Ellen W. Duryea, et al. v. E. Rollins Morse, et al.; and,

"WHEREAS, the first party has not paid the second parties the consideration for the conveyance dated................ day of................, 19.....; and,

"WHEREAS, it is the desire and purpose of all the parties hereto to settle and adjust all the matters of difference between them respecting said lands;

"Now, THEREFORE, it is mutually agreed by and between all the parties hereto that:

"1.   The consideration to be paid by the Big Sandy Company for said lands shall be $25.00 per acre for all such lands to which good titles can be made to the Big Sandy Company. The acreage to be paid for to be ascertained by actual survey of the several tracts, and in this making of said surveys each of the parties hereto shall be represented if they so desire; the cost of making said surveys shall be paid by the first party except the compensation for the representatives of the other parties, each paying his own representative. The work of making such surveys shall be begun as soon hereafter as practicable and prosecuted with reasonable diligence until completion. Payment to be made to

second parties as soon as acreage is ascertained, each, that is to say, Mrs. Bone and Mrs. Duryea, to receive one-half of the said consideration of $25.00 per acre.

"2. The second and third parties will purchase the claims of E. Rollins Morse if the same can be done for a sum not exceeding $25,000.00, each paying one-half thereof, and if the said purchase cannot be made as aforesaid, then the suit of Duryea v. Morse shall be prosecuted until final judgment, and recovery in said proceeding shall be for the joint and equal use and benefit of the said second and third parties, and if the decree should vest title in the lands mentioned in said suit and subsequently deeded to the first party by Mrs. Bone, in either of the parties hereto, then the first party shall pay the second and third parties the said $25.00 per acre as hereinabove specified after apt deeds have been made therefor by the second and third parties or either of them conveying such interests to the first party as may be decreed in them.

"3. The claims of Fon Rogers and Lon Rogers to the lands herein mentioned shall be either defended in the courts or settled and adjusted by the third party and second parties at their equal cost and expense in such manner and method as they may see fit.

"4. It is mutually agreed between the parties hereto that if the court should decree the lands in controversy in the said suit of Duryea v. Morse, et al., to be the property of the plaintiffs, or either one of them therein, then all valid and subsisting charges or liens against the same occasioned by reason of the legal title having been vested in said Morse or his vendee, or if the court should decree to said Morse or his assigns any sum of money to be paid by the plaintiffs, on account of expenditures made to pay taxes or redemption, or for attorney's fees, or compensation for services rendered for the protection of said lands, then all such sums so decreed to be paid or adjudged to be liens or charges against the lands, shall be paid out of the fund arising from the sale to the Big Sandy Company herein mentioned, and the residue after making such payments shall be equally divided between second and third parties hereto."

The chancellor dismissed the intervening pleading of appellant, and in effect adjudged that under the terms of the contract she had no claim upon any part of the 25 per cent. which Morse was to pay Mrs. Duryea.

The situation of the three parties to that contract when it was entered into was this: The Big Sandy Company was in possession, as recited, of about 6,000 acres of mineral rights conveyed to it by appellant for which, up to that time, it had paid no consideration, and which it was anxious to acquire by good title; Mrs. Bone, asserting her tax title to be valid which she had theretofore conveyed to the Big Sandy Company, and for which she had then received no compensation, was anxious to get as much as possible for her title to the property; Mrs. Duryea who had formerly been the undisputed owner of these mineral rights was anxious not only to get rid of the tax title which was a cloud upon her title and that of her vendees, but was likewise anxious to cancel and set aside the conveyance previously made by her to Morse, and the conveyances made by Morse to the Rogers brothers, to the end that she might be reinvested with the full title, and then sell same for much more than she would receive therefor under her agreement with Morse.

Accordingly, each of them being more or less doubtful as to the validity of her title as against that of the other, and the Big Sandy Company being anxious to acquire the property from whichever one might prevail, the latter agreed to pay to them jointly—one-half to each—such a price as would be satisfactory to them no matter which prevailed. In other words the two women pooled their titles which were in controversy, and in the same contract bound the Big Sandy Company to pay to them—one-half to each—a price satisfactory to them in the event the rights of either were upheld as against Morse and the Rogers brothers.

An analysis of the contract makes it reasonably clear that the parties to it were contracting with reference to the outcome of a litigation, and had in contemplation if that outcome should be either one of two ways, their conflicting interests should be determined in the manner therein set forth. That is, if the tax title was upheld the sale price to the Big Sandy Company was to be equally divided between the two women; on the other hand if Mrs. Duryea was successful in setting aside the conveyances to Morse and Rogers brothers and in de-

feating the tax title, then likewise they were to divide equally between them the $25.00 per acre.

But nowhere in the contract was the contingency provided for, or even contemplated, which actually came about. There was no controversy between Mrs. Duryea and Morse as to the compensation coming to Mrs. Duryea in the event her conveyance to him was upheld; nor could there have been any basis for a claim by Mrs. Bone that she was entitled to any part of what was coming to Mrs. Duryea under her contract with Morse in that event.

Accordingly, no reference is found in the contract to any division between Mrs. Duryea and Mrs. Bone of the 25 per cent. to which Mrs. Duryea was conceded to be entitled in the event the tax title was defeated and her conveyance to Morse and Morse's conveyances to the Rogers brothers were upheld.

It is apparent that in this contract the parties were contracting with reference to a situation which never came to pass, and were not contracting with reference to the rights of one of them in the actual situation which did come to pass. The recital in the preamble to the contract that

> "It is the desire and purpose of all the parties hereto to settle and adjust all the matters of difference between them respecting said lands"

is not inconsistent with this view; for there was no difference between Mrs. Duryea and Mrs. Bone in the event the tax title should be declared invalid, and the conveyances to Morse and Rogers brothers valid. Manifestly Mrs. Bone had no interest in any settlement or adjustment between Morse and Mrs. Duryea in the event her tax deed was declared invalid and the Morse deed valid.

Nor is the recital in the second paragraph of the contract that in the event the claims of Morse cannot be compromised the suit is to be prosecuted until final judgment, "and recovery in said proceeding shall be for the joint and equal use and benefit of the said second and third parties," to be deemed in conflict with this view. The recovery to which the parties there had reference was the recovery of the property involved either by Mrs. Duryea in her suit to set aside the several conveyances, or by the Big Sandy Company, the vendee of Mrs. Bone, in the upholding of the tax title.

That quoted provision of paragraph two could have had no reference to a recovery by Mrs. Duryea of one-

fourth of the purchase price in the sale by Morse to Rogers brothers, for there was in fact no such recovery sought by her. On the contrary, the recovery sought by her was the setting aside of the very instrument under which she was to receive that 25 per cent. Not only so there was no controversy between any of the parties to the litigation with reference to that 25 per cent. Not only did Morse not controvert it, but he was endeavoring strenuously to uphold the very instrument under which he had undertaken to pay it.

The contract appears to deal with almost every conceivable situation respecting these lands and the pending litigation concerning them, except the one contingency that the Morse deed and the Rogers deeds should be upheld and the tax title declared invalid. In the first paragraph the Big Sandy Company agrees to pay $25.00 per acre for all of such lands to which good title can be made. Provision is then made for the survey of the land and the payment of the expenses thereof; and then it is provided that the consideration is to be equally divided between the two women.

In the second paragraph the two women agree to buy the claims of Morse if it can be done for not exceeding $25,000.00, each to pay one-half thereof; if not then the suit is to be prosecuted to final judgment and any recovery therein to be for their joint and equal use and benefit, if either of them should succeed.

In the third paragraph it is agreed either to contest the claims of the Rogers brothers or settle and adjust the same at the equal cost and expense of the two women.

In the fourth paragraph it is agreed that if the lands be adjudged to either one of them then all valid and subsisting charges and liens against the same because of the vesting of the legal title in Morse, or his vendee, or if it should be adjudged that Morse, or his vendees, are entitled to anything because of expenditures for taxes or attorney's fees or otherwise, such sums should be paid out of the fund arising from the sale to the Big Sandy Company, and the balance equally divided between the two women.

This short analysis of each and every provision of the contract is most convincing that the parties were not in fact contracting with reference to the situation which actually eventuated, viz., that the Morse and Rogers conveyances were valid and the tax title invalid.

Judgment affirmed.